**Vera IMES, et al.**

v.

**PHILADELPHIA HOUSING AUTHORITY, et al.**

**Civil Action No. 93–6342.**

United States District Court, E.D. Pennsylvania.

April 30, 1996.

Michael Donahue, Community Legal Services, Philadelphia, PA, for plaintiff.

Michael Pileggi, Philadelphia Housing Authority, Philadelphia, PA, for defendant.

### *MEMORANDUM*

RAYMOND J. BRODERICK, District Judge.

This is a class action brought by tenants of public housing managed by the Philadelphia Housing Authority ("PHA"), alleging that PHA's practices regarding the painting of tenant units deprive Plaintiffs of their right to "decent, safe, and sanitary housing" under the United States Housing Act, 42 U.S.C. § 1437. Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1437, and seek declaratory and injunctive relief directing Defendants to routinely paint PHA tenant units. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

On March 16, 1994, the Court certified a class pursuant to Fed.R.Civ.P. 23(b)(2) as follows:

> All Philadelphia Housing Authority tenants who have been deprived of safe, decent and sanitary housing pursuant to 42 U.S.C. § 1437 as a result of PHA's failure or refusal to paint tenants' rental units or provide tenants with paint to paint their rental units.

A non-jury trial of this action was held on October 30, 1995.

### I. FINDINGS OF FACT

At the commencement of the non-jury trial, counsel for the parties informed the Court that there were no factual disputes as to PHA's paint practices. The Court thereupon asked the parties to put a stipulation as to PHA's paint practices on the record, which the Court will summarize as follows.

PHA provides interior paint to PHA tenants if PHA has paint in stock and the tenant is not delinquent in rent or has entered into a rent repayment agreement (in which the tenant will pay their regular rent plus an additional ten percent of that rent towards any outstanding delinquency). PHA will perform the painting itself if the tenant is not capable of painting.

When paint is in stock, a tenant may obtain only two gallons of paint at a time. If a tenant is unable to pick up paint at PHA offices, PHA will make arrangements to provide paint to the tenant. Due to budgetary restraints, paint is periodically unavailable to tenants.

As the parties were unable to stipulate to PHA's policy regarding the painting of the exterior of PHA units, PHA called Dennis Glancey, who had served as director of "scattered site" housing for PHA. Based on Glancey's direct testimony and cross-examination, the Court finds that most of PHA's scattered site housing units have brick facades and that PHA does not routinely paint the exterior of these units during the course of a tenant's occupancy. However, PHA does paint the exterior surfaces of these units at various times due to deterioration, and PHA has recently completed replacing and repainting windows on 300 units of scattered site housing. PHA never provides exterior paint to tenants because of potential safety problems in allowing tenants to paint the exteriors of their units.

When repair work has been done to the interior of a tenant unit, either by PHA or by its contractors, PHA only requires its maintenance staff or contractors to repaint interior surfaces if the repair work was substantial. Plaintiffs dispute the extent to which PHA or its contractors did painting after such repairs, but Plaintiffs presented no testimony at trial on this issue. Counsel for both parties also disputed the extent to which paint was in stock and the number of hours during which PHA made paint available to tenants, but no testimony on this issue was presented at trial by either party.

In their proposed findings of fact and conclusions of law, Plaintiffs have acknowledged that PHA paints the interiors of its units immediately prior to when a new tenant family is moved in. However, PHA does not routinely repaint the interior of occupied tenant units.

PHA's current lease also includes an attachment entitled "Question Most Commonly Asked by PHA Applicants/Residents" which includes the following text:

9. Can I paint/decorate my unit?

Yes. Paint may be supplied by PHA when needed and/or requested.

Both parties agree that PHA is a body exercising the public powers of the Commonwealth of Pennsylvania, and that it receives funds from the U.S. Department of Housing and Urban Development pursuant to the United States Housing Act, 42 U.S.C. § 1437, in order to provide public housing in the City of Philadelphia. Both parties also agree that PHA has no written policy providing for the painting of the interior or exterior of its rental units.

## II. CONCLUSIONS OF LAW

42 U.S.C. § 1437 provides in relevant part:

§ 1437. **Declaration of policy.**

It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income and, consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.

Plaintiffs contend that PHA's paint practices have violated their rights under this statute to "decent, safe, and sanitary housing."

In *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the United States Supreme Court explained the nature of federal rights which may be enforced under 42 U.S.C. § 1983:

Section 1983 provides a cause of action for the "deprivation of any rights, privileges,

or immunities secured by the Constitution and laws of the United States." In *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), we held that § 1983 provides a cause of action for violations of federal statutes as well as the Constitution. We have recognized two exceptions to this rule. A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) "the statute [does] not create enforceable rights, privileges or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).

*Id.* at 508–09, 110 S.Ct. at 2516–17. In making a determination as to whether a particular statute creates a federal right which may be enforced under § 1983, the Supreme Court further explained:

> Such an inquiry turns on whether "the provision in question was intended to benefit the putative plaintiff." If so, the provision creates an enforceable right unless it reflects merely a "congressional preference" for a certain kind of conduct rather than a binding obligation on the governmental unit, *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981), or unless the interest the plaintiff asserts is " 'too vague and amorphous' " such that it is " 'beyond the competence of the judiciary to enforce.' "

*Id.* (citation omitted); *cf. Suter v. Artist M.*, 503 U.S. 347, 363, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992) (concluding that the Adoption Assistance and Child Welfare Act requiring states to make "reasonable efforts" to prevent removal of a child from her home does not "unambiguously confer an enforceable right upon the Act's beneficiaries"). Notably, in *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Supreme Court found a federal right enforceable under § 1983 where specific language in the Housing Act provided that public housing

tenants would be charged rent based on a specified percentage of their incomes.

■ In the instant case, however, the Court finds that § 1437 does not itself create rights that may be enforced through § 1983. Congress specifically identified § 1437 as a "Declaration of policy." Although Plaintiffs are arguably intended beneficiaries under Congress' policy to assist the states "to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income," the Court finds § 1437 sets forth policy language and does not itself create a binding obligation which may be enforced under *Wilder* and *Wright*. *See, e.g., Perry v. Housing Authority of City of Charleston*, 664 F.2d 1210, 1215–1217 (4th Cir.1981) (concluding that § 1437 does not create a private right of action or any legally cognizable rights under § 1983); *see also Caldwell v. Philadelphia Housing Authority*, 1995 WL 631665, at *2 (October 27, 1995) (Buckwalter, J.) (finding that § 1983 action would not succeed under *Wright* "[i]f the only allegations brought by the plaintiff were under the broad, precatory language of § 1437"); *Hurt v. Philadelphia Housing Authority*, 806 F.Supp. 515, 524 (E.D.Pa.1992) (Giles, J.). To the extent that the recent decision of the Supreme Court in *Suter v. Artist M., supra,* may now require Congress to "unambiguously confer" rights for purposes of § 1983, it is clear that § 1437 does not contain unambiguous language establishing the rights which Plaintiffs seek to enforce.

■ Plaintiffs have also asserted that PHA leases obligate PHA to maintain its projects in decent, safe and sanitary condition pursuant to 42 U.S.C. § 1437d(*l*), and that Defendants have violated their rights under § 1437d(*l*) and associated regulations. § 1437d(*l*) provides in relevant part:

> Each public housing agency shall utilize leases which—
>
> (1) do not contain unreasonable terms and conditions;
>
> (2) obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition ...

Plaintiffs rely on 24 C.F.R. §§ 966.4(e)(1) and 966.4(e)(3), which implement § 1437d(*l*) as follows:

§ 966.4 Lease Requirements.

A lease shall be entered into between the [public housing agency] and each tenant of a dwelling unit which shall contain the provisions described hereinafter ...

(e) *The [public housing agency's] obligations.* The lease shall set forth the [public housing agency's] obligations under the lease which shall include the following:

(1) To maintain the dwelling unit and the project in decent, safe and sanitary condition ...

(3) To make necessary repairs to the dwelling unit ...

A review of § 1437(d)(*l*) and the regulations relied upon by Plaintiffs provide that this statutory provision, as interpreted by the associated regulations, only requires the leases to set forth the obligations of PHA to maintain the dwelling unit and the project in a decent, safe, and sanitary condition. As Judge Patricia Wald of the United States Court of Appeals for the District of Columbia Circuit explained in reviewing a similar claim brought pursuant to 42 U.S.C. § 1437d(*l*) after the Supreme Court's decision in *Wright:*

Plaintiffs also claimed that the [housing authority] violated its lease agreements with them by failing to maintain the project in a decent, safe, and sanitary condition, and by terminating tenancies without following statutory prerequisites. These claims arise under 42 U.S.C. § 1437d(1), which stipulates that "[e]ach public housing agency shall utilize leases which" require such maintenance and termination ... Plaintiffs had initially acknowledged that normally these lease-based claims belong in local court, but argued that a distinction be drawn in this case to permit suits alleging particularly egregious lease violations to be maintained in federal court. We disagree. Such a distinction would recognize the existence of § 1437d(*l*) rights to the very things that § 1437d(*l*) merely stipulates must be required in each lease. That is, the only rights created by § 1437d(*l*) are rights to

a lease that in turn requires proper maintenance and termination. Plaintiffs do not claim that their lease fails to require these things; rather, they argue that the [housing authority] has breached its duties regarding proper maintenance and termination contained *within* those leases. We agree with the District Court that § 1437d(*l*) does not create federal rights to proper maintenance and termination, and that these claims belong in local court.

*Edwards v. District of Columbia,* 821 F.2d 651, 653 n. 3 (D.C.Cir.1987). Therefore, the statute and regulations relied upon by Plaintiffs establish only their right to a lease with certain clauses. Because Plaintiffs seek here to establish violations of the lease provisions themselves, the Court concludes that the § 1437d(*l*) and associated regulations cited by Plaintiffs do not create rights enforceable under § 1983 to housing in "decent, safe and sanitary condition" or to necessary repairs.

■ Although the Plaintiff class therefore does not have a cause of action under § 1437 or the housing regulations discussed *supra,* Congress has clearly provided individual public housing tenants with a remedy for disputes with public housing authorities in the form of an extensive grievance system. 42 U.S.C. § 1437d(k) requires the Secretary of Housing to issue regulations that require each public housing agency receiving federal funds to establish an administrative grievance procedure for tenants. The grievance procedure regulations, which PHA is subject to, clearly state that a grievance "shall mean any dispute which a tenant may have with respect to [public housing authority] action or failure to act in accordance with the individual tenant's lease or [public housing authority] regulations which adversely affect the individual tenant's rights, duties, welfare or status." 24 C.F.R. § 966.53(a). The regulations include provisions for a hearing, selection of impartial decision-makers, review of relevant documents by the tenant, and a written decision within a reasonable time. *See* 24 C.F.R. §§ 966.55, 966.56, 966.57. The regulations also provide that grievances may be informally resolved, and that a tenant must be informed of her rights to formal grievance procedures if she is not satisfied

with the informal resolution. *See* 24 C.F.R. § 966.54. Moreover, if PHA fails to implement a grievance award to a tenant, courts in this district have regularly held that a tenant may then seek enforcement of that award in federal court pursuant to 42 U.S.C. § 1983. *See, e.g., Caldwell v. Philadelphia Housing Authority,* 1995 WL 631665 (October 27, 1995) (Buckwalter, J.).

Although class grievances may not be pursued under the PHA grievance system, *see* 24 C.F.R. 966.51(b), the plaintiff class in this action, as heretofore discussed, has failed to prove any violation of their constitutional or federal rights which would entitle them to relief. In their class action complaint, Plaintiffs set forth their claims as follows:

## VI. CLAIMS

34. The actions and inactions of the defendants have violated the plaintiff's rights, pursuant to 42 U.S.C. § 1983 and the U.S. Housing Act, as follows:

a) The defendants have failed to provide safe, decent and sanitary housing as required by the U.S. Housing Act and 24 C.F.R. section 966.4(e)(1)–(7).

b) The defendants have violated the lease agreements between the parties.

c) The defendants have violated the prompt repair provisions of the consent decree in *Goodmond, et al. v. PHA, et al.,* C.A. # 75–777 (E.D.Pa.1979) (Green, J.).

d) The defendants have violated the implied warranty of habitability.

(e) The defendants have violated the fundamental due process procedural rights to notice and an opportunity to be heard before the denial or termination of a benefit.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States." *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir.1993). As discussed *supra,* Plaintiffs have no enforceable rights under 42 U.S.C. § 1983, 42 U.S.C. § 1437, and 24 C.F.R. 966.4(e) to "decent, safe and sanitary housing."

■ The Court finds that Plaintiffs' other claims as set forth above do not establish a violation of federal or constitutional rights. It is clear that a violation of the Pennsylvania warranty of habitability or the lease agreements between tenants and PHA is not a violation of a federal or constitutional right. The Court has also reviewed the *Goodmond* consent decree, which concerns repairs to tenant units, repair charges, and repair-related grievances, and concludes that Plaintiffs have no cause of action under § 1983 for compliance with that decree.

■ In considering Plaintiffs' claim of a violation of procedural due process, the Court notes that this claim arises out of allegations that Defendants will deny a tenant paint on the basis of erroneous determinations that a tenant is not current in her rent or has not entered into a rental repayment agreement. At trial, however, Plaintiffs failed to introduce any evidence of a risk of an erroneous calculation of rental obligations and a subsequent denial of paint. In light of the nature of a tenant's interest in paint and the availability of the grievance system to resolve such disputes as the status of a tenant's rental account and other actions or inactions that "adversely affect a tenant's rights, duties, welfare or status," as discussed *supra,* the Court concludes that Plaintiffs have failed to prove any violation of procedural due process. *Cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Reich v. Beharry,* 883 F.2d 239 (3d Cir.1989). Moreover, as set forth above, § 1437 of the United States Housing Act, which forms the basis of the class certified by this Court, does not establish a right to safe, decent and sanitary housing on the basis of a refusal of PHA to provide paint to a tenant.

Finally, the Court concludes that even if it were to deem Plaintiffs' non-constitutional claims to have been asserted only pursuant to state law, the Court is convinced it would exercise its discretion pursuant to 28 U.S.C. § 1367(c)(3) and dismiss any such remaining state law claims given its resolution of all claims over which the Court had original jurisdiction.

For these reasons, the Court will enter judgment in favor of Defendants and against the Plaintiff class.